TERRE HAUTE ELECTRIC COMPANY, INC. (FORMERLY TERRE HAUTE TRACTION AND LIGHT COMPANY), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 43767, 68897, 77066.   Promulgated January 24, 1936.

976

*A. E. James, Esq.*, for the petitioner.
*Elden McFarland, Esq.*, for the respondent.

## OPINION.

LEECH: The first issue is whether dividends paid by the lessee of petitioner's property, directly, to the latter's stockholders constitute rental income to petitioner. These payments, made in the three years here involved, were reported by petitioner, as income, on its returns filed for those years. Similar amounts were also

reported by petitioner as dividends paid. It now claims the inclusion of these amounts in its income for these years was erroneous because, under the facts existing, they did not represent income received by it.

Article 16 of the lease of March 25, 1907, provides that, in consideration for the use of the leased property the lessee will pay, *"as rental"*, the interest upon the bonded indebtedness of the lessor and, as *"additional rental"*, a sum *"equal* to three per cent. on the par value of the then outstanding preferred stock of the Lessor * * * and * * * a sum *equal* to two and one-half per cent., or $50,000, on the par value of said common capital stock of the Lessor." (Emphasis supplied.) It further provided that the payments in question:

* * * *shall be paid to the Lessor as follows:* Ten (10) or more days before any such payment becomes due the Lessor shall declare a dividend of an amount equal to said payment to the holders of the shares of its common and preferred capital stock, and the Lessee, as agent of the Lessor, shall pay the amounts of such dividends thus declared to such persons and in such amounts to each as shall be certified to the Lessee under oath by the treasurer of the Lessor at least ten (10) days before the sum to be paid becomes due and payable, as entitled to receive the same on the day the same becomes due and payable by virtue of their respective holdings of the common and preferred capital stock of the Lessor. The Lessor, in the interest and for the benefit of the holders of its stock, being all of its common and preferred shares, hereby requests and directs the Lessee thus to pay for the benefit of the Lessor said sums of money, the payments of which are provided for in said subdivisions (a) and (b) of paragraph 2 of this article, directly to the holders of said common and preferred shares respectively, in such amounts to each as shall be certified to the Lessee under oath by the Treasurer of the Lessor at least ten days before the sums to be paid under said subdivisions (a) and (b) of paragraph 2 of this article become due, and to accept the receipts of the persons to whom such payments shall be made in lieu of the receipt of the Lessor therefor, with the same effect as if such payments had been made to the Lessor and receipted for by it; and the Lessee, in pursuance of said request and direction, hereby agrees that it will make said payment of said sums, the payments of which are provided for in said subdivisions (a) and (b) of paragraph 2 of this article, to said shareholders certified to it as aforesaid, in the amounts in each case so certified, it being agreed that said certificates so presented to it from time to time shall exempt it from all liability to inquire or be informed concerning the performance of prerequisite conditions. [Emphasis supplied.]

The lessee agrees under the lease "that it will, at the request of the Lessor, endorse upon each certificate of common and preferred capital stock of the Lessor its said agreement to make said payments to the holders thereof, in pursuance of and according to the terms herein stated." A certificate which included this obligation was stamped upon the shares of original preferred stock of petitioner.

In each of the years here involved the petitioner has, by corporate resolution duly adopted, declared the payment of common and

preferred dividends on its stock as provided by the lease and has furnished the lessee with a certified list of the stockholders entitled to the payment of such dividends. During each of those years the lessee has paid the amounts in the manner provided in article 16 above referred to, directly to stockholders of the lessor. It has also paid direct to the holders of petitioner's bonds the interest thereon as provided by the lease. However, petitioner raises no question as to the inclusion of such interest in its taxable income.

The question presented has been answered in *Rensselaer & Saratoga Railroad Co.* v. *Irwin*, 249 Fed. 726; certiorari denied, 246 U. S. 671; and *West End Street Railway* v. *Malley*, 246 Fed. 625; certiorari denied, 246 U. S. 671. See also *Gold & Stock Telegraph Co.*, 26 B. T. A. 914; *Northwestern Railroad Co. of New Jersey* v. *Lowe*, 250 Fed. 856; *Houston Belt & Terminal Railway Co.* v. *United States*, 250 Fed. 1; *Blalock* v. *Georgia Railway & Electric Co.*, 246 Fed. 387; *American Telegraph & Cable Co.*, 17 B. T. A. 783; *Hamilton* v. *Kentucky & I. Terminal R. Co.*, 289 Fed. 20; *United States* v. *Boston & Maine Railroad*, 279 U. S. 732; *Burnet* v. *Wells*, 289 U. S. 670, 677.

Petitioner relies upon the recent decision by the United States District Court for the District of Connecticut in the case of *United States* v. *Northwestern Telegraph Co.*, 10 Fed. Supp. 708. This decision is contrary to those heretofore cited and to the conclusion reached by us in prior cases upon similar facts. It is also true that the courts in three cases, *United States* v. *Western Union Telegraph Co.*, 50 Fed. (2d) 102, and *Western Union Telegraph Co.* v. *Commissioner*, 68 Fed. (2d) 16; and *Harwood* v. *Eaton*, 59 Fed. (2d) 1009, have expressed some doubt as to the correctness of the decision in the *Rensselaer* and *West End Street Railway* cases. The decisions in the latter cases, however, have not been overruled and we have not considered such expression of doubt as sufficient ground upon which to base a different view from that already expressed by us. *Gold & Stock Telegraph Co.*, *supra*. It is further noted that in *United States* v. *Northwestern Telegraph Co.*, *supra*, the lease in question did not, as here, expressly constitute the lessee as agent of the lessor for the payment to its stockholders of the dividends in dispute. Nor did it provide for the declaration of such dividends by the lessor prior to payment. We think those distinctions are material.

The court's decision in the last cited case was predicated upon the condition established there, that no liability existed on the part of the lessor to its stockholders with respect to the payments made to them by the lessee. In the present case such liability existed. Dividends were regularly declared by the lessor and the payments to its stockholders by the lessee were in satisfaction of that liability.

We conclude that respondent did not err in including in petitioner's income the payments in question as rentals accruing to it from its property.

The second issue is whether deductions for the exhaustion of its leased assets by reason of wear and tear are allowable to petitioner for the several years in question.

By the present lease an obligation was placed upon the lessee to accept the properties of the lessor in the condition existing as of the beginning of the lease term and, during that term,

* * * renew, repair and replace the same, so as to maintain and keep the demised premises in as good order, repair and condition as the same are now and in their present state of efficiency; that it will from time to time at its own expense (except as otherwise provided in Article 3 hereof) make all extensions, additions, alterations, improvements, renewals and betterments which may be necessary or proper with reference to the premises or property hereby demised and for the use and operation thereof, and will do and perform all other things necessary to make and maintain said street and interurban street railroads, plants and systems as first class, modern and efficient street and interurban street railroads, electric lighting, power and steam heating plants and systems; that all lands, structures, improvements, betterments, and renewals added to or made upon the demised premises, and all rights, privileges and franchises acquired by the Lessee in connection with the demised premises shall, upon payment therefor, as hereinafter provided, become the property of the Lessor and be treated as part of the demised premises and be subject to all the terms, conditions and provisions of this indenture in like manner as if they had been vested in the Lessor at the date of this instrument.

The lease also provided that the obligation of the lessor, at the expiration of the lease, to pay to the lessee for additions and betterments made by the latter, did not apply to expenditures "made in the renewal of or substitution for property existing at the commencement of the term of this lease, and thereafter worn out or destroyed."

By article 3 of the lease the lessee is permitted to dispose of any of the real or personal property leased which is worn, damaged, or no longer necessary for its proper purposes or to alter, change, or replace such property with the obligation that, in case of the sale of property, the proceeds must be applied to the substitution of property equal in value to that sold, or expended to increase the value of the other leased property.

It has been held repeatedly by the courts and this Board that, in cases involving long-term leases of this character, imposing an obligation upon the lessee to maintain the property and to make, at its own expense, repairs and renewals necessary for this purpose, the lessor is not entitled to deductions for depreciation resulting from physical exhaustion, wear and tear. *Weiss* v. *Wiener*, 279 U. S. 333; *Ohio-Cloverleaf Dairy Co.*, 13 B. T. A. 1320; affd. 41 Fed. (2d) 1009; *Terre Haute Electric Co.* v. *Commissioner*, 67 Fed. (2d) 697; certiorari denied, 292 U. S. 624; *Georgia Railway &*

*Electric Co.* v. *Commissioner*, 77 Fed. (2d) 897; *Tunnel Railroad of St. Louis* v. *Commissioner*, 61 Fed. (2d) 166; certiorari denied, 288 U. S. 604; *Michigan Central Railroad Co.*, 28 B. T. A. 437; *Atlantic Coast Line Railroad Co.*, 31 B. T. A. 730.

In *Terre Haute Electric Co.* v. *Commissioner, supra*, this Board considered the same lease upon the question as to whether this same petitioner was entitled to allowance of deductions for exhaustion, wear and tear of the same property here involved. Such deductions were denied. Respondent contends that, aside from his position that petitioner is not entitled to deductions for wear and tear, upon the present facts, it is also estopped to be heard again on this question by reason of the judgment rendered in the cited case. We are in agreement with that contention. The issue submitted in that case was identical to that presented here in the claim for deductions for exhaustion by reason of wear and tear of the leased property. The parties to both of the proceedings are the same. Although the issue here has to do with a later year and thus constitutes a new cause of action, the question there litigated is identical with that now before us and was submitted upon the same material facts.

Petitioner argues in vain that this result is avoided because "the real party in issue" here is the Public Service Co. of Indiana, the petitioner's present lessee, which acquired the lease by assignment.

The lessee, Public Service Co. of Indiana, is not a party to these proceedings. Here, as in the earlier case, we are determining the rights of the lessor under one lease. The lessee became such by purchase, approved by a proper court order, under both of which it became subrogated to the rights and assumed all the obligations of the original lessee. The rights of petitioner, lessor, under that lease, are not affected by the identity of the lessee, at any time. The Circuit Court of Appeals for the Seventh Circuit, in that prior proceeding under this lease, denied any depreciation allowance for physical exhaustion "because of the lease." This concludes petitioner on that issue here. *Nachod and United States Signal Co.* v. *Helvering*, 74 Fed. (2d) 164; *Cromwell* v. *County of Sac*, 94 U. S. 351; *Keokuk & Western Railroad Co.* v. *Missouri*, 152 U. S. 301; *Tait* v. *Western Maryland Railway Co.*, 289 U. S. 620; *Portage Silica Co.*, 29 B. T. A. 881.

The conclusion just reached applies with equal force to the third issue submitted. Respondent is likewise sustained on this issue.

The fourth issue is raised by petitioner's claim for a reasonable allowance for exhaustion of the leased assets by reason of obsolescence of three of the lines of interurban railroad.

Respondent contends that petitioner is not entitled to deductions for obsolescence for three reasons: First, that the question is *res adjudicata* because "obsolescence" is included in the general term

"depreciation." Consequently, he argues, this question has been finally determined against petitioner in the former proceeding discussed under the second issue; second, that, under the terms of the lease in dispute, obsolescence is not subject to deduction by the lessor, and, third, that even were obsolescence allowable to petitioner the latter has failed to prove the necessary basis for its computation.

We do not agree with the first contention. Depreciation is "the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will (with the salvage value) suffice to provide an amount equal to the original cost." *United States* v. *Ludey*, 274 U. S. 295, 300–301.

Although obsolescence may not be a deduction allowable in addition to depreciation, it is a possible additional element in that computation. *Kaltenbach* v. *United States*, 66 Ct. Cls. 581.

And, the denial of an allowance for physical exhaustion of assets does not, necessarily, foreclose an allowance for obsolescence. *Terminal Realty Corporation*, 32 B. T. A. 623. Physical depreciation, *alone*, was in dispute in the earlier case, the decision in which is here pleaded in bar. No obsolescence occurred during the years there involved. It is a fact not there litigated. So, the right of petitioner here, to an allowance for obsolescence is not *res adjudicata*. *Tait* v. *Western Maryland Railway Co., supra*.

Respondent's second contention is not so easily answered. The lease here is for a term of 999 years from March 1, 1907. Under its terms the lessee is required to maintain, repair, and replace the leased assets and to return them, at the conclusion of the lease term, in the same operative condition as when received. Under such a lease the lessor is not entitled to physical depreciation since the lessee is obligated to maintain the assets in an undepreciated condition, physically. (See cases cited on second issue, *supra*.) This argument, however, does not apply to obsolescence, which is a loss of economic value during the physical life of the property, and not compensated by repair, or by replacement with a similar asset.

If petitioner is denied an allowance for leased assets which it has shown have become obsolete during their physical life, that disallowance must be supported by some condition or lease provision other than those which preclude an allowance for physical depreciation.

Article 3 of the lease provides:

The Lessor covenants that in case the Lessee considers any part of the real or personal property hereby leased to be worn, damaged, or no longer suitable or necessary for its proper purposes, it may sell, alter, change or replace such property, and the Lessor will act with the Lessee in any sale thereof, and in executing and delivering such instruments as may be necessary to transfer its title therein to the vendee, provided that such sales shall

always be in accordance with the terms of the mortgages at that time existing upon the property, and provided further that in the absence of mortgage provisions for such a transaction, the proceeds of any such sale or sales shall be applied to the substitution of property of value at least equal to that sold or shall be expended to increase the value of the other property hereby leased.

It will be noted that the above provision applies to property "worn, damaged, or no longer suitable or necessary for its proper purposes." We do not think that those provisions have application to a component part of the leased railway systems which, though still operative, are abandoned because they can be operated no longer at a profit.

This conclusion is supported by the fact that under a subsequent clause of the lease, section 14, the lessee covenants to operate the street and interurban railways leased and the electric light, power, and steam heating plants. In the event that it becomes *unprofitable* to operate the steam heating plant, it is granted the right to discontinue such operation. The fact that the abandonment of operation of one of the facilities leased, is expressly authorized, indicates that it was not intended, by section 3 above set out, to authorize abandonment of the leased facilities because of unprofitable operation, subject only to an obligation to account to the lessor for the proceeds of any salvage. If section 3 was intended by the parties to include such right there would be no need for the limited right of abandonment granted by section 14. It would seem that under the provisions of the lease the lessee now stands obligated to account to the lessor of the three lines of railroad here in controversy, by restoring them at the conclusion of the lease, in the same condition as when received March 1, 1907, if required by the lessor.

Assuming that obligation exists, which it denies, petitioner argues that the performance of that obligation at the end of this 999-year lease can not be presumed, and that, if performed, the lessor would not be compensated for the cost of those lines to it.

Certainly, on this record, we can not presume that existing obligation will not be performed. But, in any event, it is the obligation, not the length of its life, which is controlling here. Cf. *Terre Haute Electric Co.* v. *Commissioner, supra; Georgia Railway & Electric Co.* v. *Commissioner, supra.*

Though the amount of an allowance for loss therefrom may be measured by proper estimates, the fact of obsolescence must be "actual." That it is "merely contemplated as more or less sure to occur in the future" is not sufficient to support such allowance. Cf. *Weiss* v. *Wiener, supra; New York Central Railroad Co.* v. *Commissioner*, 79 Fed. (2d) 247; certiorari denied, 296 U. S. 653.

Whether these facilities, if restored, at the termination of this lease, almost a thousand years in the future, or the undoubtedly

valuable right to demand that restoration, will then have a value less or more than the cost of these three lines to petitioner, clearly can not now be answered. This uncertainty, under the present circumstances, may well defeat petitioner's contention. *New York Central Railroad Co.* v. *Commissioner, supra.* At all events those conditions contradict any suggestion that petitioner will have nothing representing its basis for the leased assets unless that basis is ratably deducted from its income during the remaining years of the lease. Cf. *Terminal Realty Corporation, supra.*

Here we have a lease term of about a thousand years, at the end of which time the lessee is to return the leased property, including these abandoned lines of interurban railways, in the same operative condition as when received. During that period the lessor is to receive the rental fixed by the lease, despite the abandonment of any portion of the leased property or of its obsolescence. It is obvious under these conditions that the economic value of the leased property to the lessor is, during this long period, unchanged by reason of any obsolesence sustained and that, if there be any loss because of obsolescence, it can be measured only in terms of the lessor's reversionary interest, the determination of the value of which must await termination of the lease. Cf. *Old Colony Railroad Co.*, 18 B. T. A. 267; affd., 50 Fed. (2d) 896.

The term of this lease exceeds the physical life, not only of all the depreciable assets leased, but that of many repeated replacements and renewals. To permit the substantial deductions claimed as obsolescence sustained, not upon the street and interurban railway lines, leased as such, but upon a collection of distinct assets with separate costs, and computed upon a reversionary interest, now, and for many years, practically valueless, would seem to result in a clear distortion of income for those years. That result would condemn the allowance. *New York Central Railroad Co.* v. *Commissioner, supra.*

Apparently, the question as to whether a lessor of property under such a lease, for a term of approximately one thousand years, is entitled to obsolescence has not been decided by the courts or this Board. However, for the reasons stated, it seems, at least, doubtful that this petitioner could deduct any allowance for obsolescence of the three interurban lines under the conditions imposed by the lease in dispute. But, aside from that question, no obsolescence is allowable in the absence of a basis for its computation. The basis for the allowance of obsolescence is the same as that to be used for determining gain or loss. That basis is fair market value or cost of the obsolescing assets, whichever is higher, on March 1, 1913. Revenue Act of 1926, secs. 234 (a) and 204 (a) and (b); Revenue Act of

1928, secs. 113 (b) and 114 (a). This record fails to disclose either that depreciated cost or fair market value.

The three lines in question were constructed prior to March 1, 1913. The exact date of that construction is not shown. It is indicated to have occurred about 1900. We have found that these railway lines, for transportation purposes, became obsolete over a period beginning in 1927 and ending, as to two of them, in their abandonment for those purposes in 1931 and as to the third on the date of its abandonment, in 1932.

Petitioner has established the original investment in these lines, the increase of that investment to the time of the lease in 1907 and the increases between 1907 and March 1, 1913, by reason of additions and betterments installed by the lessee which became the property of the lessor with the obligation upon the latter to reimburse the lessee for their value at the conclusion of the lease. It has also proved the cost to reproduce these three lines, new, on March 1, 1913. But, without proof of the depreciation sustained, we are unable to determine the depreciated cost which is the limit of the cost which may be recovered. Nor is the proof of cost of reproduction, new, on March 1, 1913, unsupported by other evidence, a measure of the fair market value of these lines on that date. *Paducah Water Co.*, 5 B. T. A. 1067; affd., 32 Fed. (2d) 559; *Henry A. Cleland Estate Co., Ltd.*, 29 B. T. A. 436; *National Packing Corporation*, 24 B. T. A. 952. The burden is unquestionably upon petitioner to establish the amount of the deduction. *Burnet* v. *Houston*, 283 U. S. 223; *New Colonial Ice Co.* v. *Commissioner*, 292 U. S. 435; *Helvering* v. *Independent Life Insurance Co.*, 292 U. S. 371.

It is true that the parties have agreed as to the amount of physical depreciation sustained by the leased assets during the three years here in dispute. We have held petitioner is not entitled to deduct that depreciation under a lease of this character. But that depreciation does not establish the basis of fact here necessary. That depreciation includes such as was sustained upon all of the present leased properties of petitioner, without segregation. The amount applicable to the three lines is not disclosed. This is fatal to petitioner's position. *Georgia Railway & Electric Co.* v. *Commissioner, supra.* Statements of purported earnings of the three obsolete railway lines appear in the record. But, although earnings may be competent evidence of fair market value, that is not true where those earnings do not, necessarily, reflect such value. *Newton Cotton Mills*, 12 B. T. A. 176. The three railway lines here involved were being operated by the lessee as a part, not only of the railway lines, power generating plants and transmission systems, included in the particular lease from the petitioner, but also as a part, only, of other railway lines, power generating plants and transmission systems, op-

erated by the Indiana Public Service Co. No appraisal or expert testimony of those values was offered here. In such circumstances, operating costs and earnings of these three railway lines, even if properly computed, in the absence of testimony as to the fair market values of those lines at the critical date, are not sufficient upon which to predicate an appraisal of such values as a fact.

Again, even if a basis for the computation of obsolescence were disclosed here, if the leased properties in question were railway lines and not just aggregates of physical assets, including real estate, this record does not establish abandonment of any of those lines. True, some of the equipment and facilities have been discarded. But the transmission lines, leased and maintained on the rights-of-way for the distribution of power are neither obsolete nor abandoned. They are still in use. Certainly the real estate has not been abandoned. *Greenleaf Textile Corporation*, 26 B. T. A. 737; affd., 65 Fed. (2d) 1017.

If treated as a group of separate physical assets, we think neither the remaining useful life of the assets upon which obsolescence is claimed, nor their respective bases have been established. These are essential facts to the allowance (*Georgia Railway & Electric Co.* v. *Commissioner, supra*), and it was petitioner's responsibility to establish them. *New Colonial Ice Co.* v. *Helvering, supra.* Difficulty or even impossibility of proving necessary facts may be unfortunate, but that circumstance does not relieve petitioner from the burden of establishing those facts. In such situation, it is merely without a remedy. *Burnet* v. *Houston, supra.*

In addition to its fatal failure to prove a basis to support the asserted obsolescence allowances, petitioner has not established either the remaining useful life of the pertinent assets, or their salvage value. Both of these facts are necessary elements for a computation of the disputed allowance. *Vogue Silk Hosiery Co.*, 27 B. T. A. 131, and cases therein cited.

We conclude that the petitioner has failed to sustain his claim for obsolescence on the leased properties.

In the last issue, petitioner claims the right to deduct a loss on the alleged abandonment of two of the three railway lines involved. This is an alternative issue controlled by the Revenue Act of 1928, sections 23 (f) and (g) and 113.

Petitioner relies wholly upon *Commissioner* v. *Providence, W. & B. R. Co.*, 74 Fed. (2d) 714, for support in this position. It is untenable. Since there was no abandonment here, no identifiable event occurred to support a loss. *United States* v. *White Dental Manufacturing Co.*, 274 U. S. 398.

Passing that difficulty, the lessee in the cited case had no obligation to account to the lessor for the cost of the asset sold—only for its

sale price. Here the lessee was obligated to restore the physical equivalent of the assets leased. Thus, not only the fact, but the amount of any present loss is undeterminable. (See discussion and authorities in fourth issue, *supra*.) Further, as stated above, this record establishes no basis for the computation of any loss. Revenue Act of 1926, sec. 204; Revenue Act of 1928, sec. 113.

And, finally, in our opinion, the decision of the Board in *Old Colony Railroad Co.*, *supra*, disposes of this issue here. In that case, the inquiry was whether the lessor, under a 99-year lease much similar in its terms to the pending one, received taxable income in the amount of the excess over cost received by the lessee in its sale of leased assets. In refusing to consider this gain as then realized by and thus taxable to the lessor, we said:

To consider them sales of property by petitioner, and the proceeds as gross income to petitioner, is to overlook not only the fact that the proceeds were received and used by the New Haven with no obligation upon its part except to replace the property at the expiration of the lease period of 99 years, but the fact that the property conveyed represents both the reversion of petitioner in such property and the leasehold interest therein belonging to the New Haven—its right to use for a remaining period of more than 70 years, which right would have a present value many times that of the reversion. Petitioner's participation in or use and enjoyment of any gain realized is necessarily postponed until the termination of the lease. It receives no increased rental by reason of the transactions.

We refused there to consider a change in the leased assets as giving rise to gain to the lessor. Here we have the converse—an asserted loss by such change. Although the *Old Colony* case had to do with the question of an inclusion in income, while we are concerned here with a statutory deduction from income, the rationale supporting the exclusion of the income item in the *Old Colony* case would deny the loss deduction here.

*Judgment will be entered for the respondent.*