GULF, M. & N. R. CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 8022.

Circuit Court of Appeals, Fifth Circuit.

May 11, 1936.

Geo. E. H. Goodner, of Washington, D. C., for petitioner.

S. Dee Hanson, of Washington, D. C., Sewall Key, Sp. Asst. to Atty. Gen., Robert H. Jackson, Asst. Atty. Gen., and Herman Oliphant, Gen. Counsel, for the Department of the Treasury, and Hartford Allen, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

The Gulf, Mobile & Northern Railroad Company petitioned the Board of Tax Appeals for a redetermination of a deficiency assessment made by the Commissioner of Internal Revenue against said company for income taxes for the years 1928 and 1929. The Board sustained the Commissioner's determination; overruled a motion for reconsideration; and the case comes here on petition of the railroad company for review of the Board's decision. The two main questions presented by the petition are: (1) Whether the petitioner, as lessor of certain railroad track material, is entitled to deduct for depreciation of the leased material due to ordinary wear and tear and to obsolescence for the years 1928 and 1929; and (2) whether petitioner is entitled to deduct for certain alleged losses sustained by it in 1929 upon the liquidation of subsidiary railroad companies and the acquisition of their assets by petitioner.

1. During the years 1928 and 1929 petitioner leased rails, angle bars, and other track material to various lumber companies for the construction of short railroads used in logging operations. A depreciation of 4 per cent. per annum is claimed on this material, and there is a stipulation in the record that this amount is reasonable and allowable, if petitioner is entitled to take depreciation. The testimony is uncontradicted that obsolescence takes place in the case of light-weight track material such as is described in these leases. An allowance for obsolescence is usually referred to as depreciation, excluding from the term any idea of a mere reduction in market value. The respondent admits that the statute and regulations

allow deductions for depreciation of such property so that its cost will have been returned to the owner at the end of its useful life, but contends that the property, under the terms of the leases herein, was to be returned to the lessor in as good condition as when originally leased, or adjustments made in cash or otherwise by the lessees for any differences resulting from loss or wear and tear. The petitioner admits that, where there is in fact no loss from depreciation, because the lease provides for the return of the property in as good condition as when received, the deduction should be disallowed, citing Appeal of A. Wilhelm Co., 6 B.T.A. 1; Terre Haute Electric Co. v. Commissioner (C.C.A.7) 67 F.(2d) 697, certiorari denied 292 U.S. 624, 54 S.Ct. 629, 78 L.Ed. 1479; Georgia Railway & Electric Co. v. Commissioner (C.C.A.5) 77 F.(2d) 897, certiorari denied 296 U.S. 601, 56 S.Ct. 117, 80 L.Ed. ——; Terre Haute Electric Co. v. Commissioner, 33 B.T.A. 975; but it contends that there is no such provision in the leases before this court; that the facts here disclose the existence of depreciation which petitioner is entitled to take; and that, since respondent has agreed to the correct amounts, the Board erred in disallowing the deductions, citing Richmond Belt Railway Co. v. Commissioner, 13 B.T.A. 1291; Terminal Realty Corporation v. Commissioner, 32 B.T.A. 623; Terminal Railroad Association of St. Louis v. Commissioner, 33 B.T.A. 906; Boggs & Buhl v. Commissioner, 34 F.(2d) 859 (C.C.A.3); Nichols v. Commissioner, 44 F.(2d) 157 (C.C.A.3); Bonwit Teller & Co. v. Commissioner, 53 F.(2d) 381, 82 A.L.R. 325 (C.C.A.2); Planters' Operating Co. v. Commissioner, 55 F.(2d) 583 (C.C.A.8); Blackmer v. Commissioner, 70 F.(2d) 255, 92 A.L.R. 982 (C.C.A.2); B. B. Jones et al. v. Helvering, 63 App. D.C. 204, 71 F.(2d) 214; Nachod & United States Signal Co. v. Helvering, 74 F.(2d) 164 (C.C.A.6).

█ The applicable legal principles being clear, the dispute between the parties arises out of their differences in the construction of the leases and in the interpretation of the stipulation. There were introduced in evidence three types of leases. In the first, rail and angle bars were delivered by weight to the lessees at an agreed rental of 6 per cent. per annum on the value thereof, which was fixed at $30 per ton. As it was received by weight, the material

had to be returned by weight, and the lessees agreed to pay for any deficiency in weight at the agreed value. In case of damage or injury to such extent as to reduce the material to scrap, the lessees agreed to pay the difference between the scrap market value and $30 per ton, with the option to the lumber company to purchase any part of such material at the price of $30 per ton, or to substitute for any rails or angle bars reduced to scrap others in good condition and of similar weight and material. Either party had the right to terminate the agreement upon 60 days' notice. In the second type, there were similar provisions, with this difference, that the lumber company agreed to return the rails and angle bars in as good condition as when received, except for reasonable wear and tear brought about by the proper use of the same. The term of this lease ran for 20 years from its date. In the third type, the lease was to run for 15 years, with the privilege of renewal for a like period, and with the privilege of termination upon 6 months' notice, at the option of the lessees. Nothing is said therein about the condition in which the property is to be returned to the owner at the expiration of the lease. There is a provision as to the place, manner, and conditions of delivery theretofore specified, in case of cancellation of the lease by the lessees within the first 15-year period, or a renewal thereof, but those conditions merely specified that delivery should be made "at Laurel, Miss., on the right-of-way of the party of the first part." By no reasonable construction may this provision be held to refer to anything but the place and manner of making delivery. It has no reference to the condition of the leased material.

In his opening statement before the Board, the attorney for the respondent stated that the issues involved in this case were whether the petitioner was entitled to a deduction of $10,030.88 and $12,264.74 in the years 1928 and 1929, respectively, for alleged depreciation on rails and track material leased to other companies, where the leases provide for the return of the property at the end of the rental period in as good condition as when originally leased or for adjustment of any difference resulting from loss or breakage by payment in cash. Then he added: "The Petitioner's counsel has submitted figures to me this morning and I had the Revenue

Agent go over those figures, and as a question of fact, we are going to agree that those figures are correct."

Thereupon he was questioned by a member of the Board and answered as follows:

"The Member: It is a question of the interpretation of this lease or contract?

"Mr. Allen: Yes.

"The Member: The question for the Board to pass upon is the contract. The figures are not in dispute?

"Mr. Allen: That is right. Mr. Goodner intends to place in evidence a sheet showing all the details.

"The Member: You say the contract does, and Mr. Goodner says the contract does not. Under those circumstances it is the Board's duty to determine whether it does or doesn't?

"Mr. Allen: Yes, your Honor, that sheet will be introduced in evidence, with all those details, and I believe your Honor will be concerned with only two figures, to which the question of law should be applied."

Later, when attorney for petitioner offered evidence as to the normal life of the rails, the following colloquy took place:

"By Mr. Goodner (attorney for petitioner): What is the normal life of those rails, Mr. Exley, in ordinary use?

"Mr. Allen (attorney for respondent): Just a moment. Haven't we stipulated to a 4 per cent. depreciation?

"The Member: I did not think there was any question about the rate of depreciation.

"Mr. Allen: No.

"Mr. Goodner: All right, that is all."

We find nothing in the leases which obligates the lessees to return the property to the lessors in as good condition as when received or to pay a reasonable allowance for its exhaustion, wear and tear, and obsolescence; and, since it appears from the stipulation that the amounts claimed for depreciation are correct, we think the Board erred in denying the deductions.

2. The second question relates to an alleged deductible loss of $351,997.02 claimed to have been sustained by petitioner in 1929 when it took over the assets of the Meridian & Memphis Railway Company and the Jackson & Eastern Railway Company in the dissolution of those companies

during that year, and also a loss of $2,209.-65 sustained by the Birmingham & Northwestern Railway Company between October 31, 1928, and January 1, 1929. These were subsidiary companies whose properties were acquired by petitioner. The Commissioner determined that the losses were not deductible, and the Board held that the petitioner had failed to meet the burden of proving such determination to be wrong.

It is undisputed that amounts distributed in complete liquidation of a corporation shall be treated as full payment in exchange for the stock, and the loss to the distributee from such exchange shall be the excess of cost over the amount realized therefrom. Section 111(a) and 115 (c), Revenue Act of 1928 (26 U.S.C.A. §§ 111, 115 notes). The "amount realized" is defined as the sum of any money received plus the fair market value of the property (other than money) received. Section 111(c), 1928, 26 U.S.C.A. § 111 (b) and note. Therefore, in order to establish the losses claimed on the exchange of petitioner's securities for the physical assets of the subsidiary railroads acquired during the taxable year, the petitioner must prove the actual cost of the securities and also the fair market value of the physical assets at the time of the exchange. Cf. Burnet v. Houston, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991. If petitioner has failed to prove either, it cannot prevail. The record fails to disclose the cost or the fair market value of petitioner's stock at the time of the exchange. Neither the separate cost or the fair market value of the stock of the Meridian & Memphis Railway Company nor the total cost or fair market value of its bonds and stocks has been shown. In addition, the railroad companies here involved were affiliated and filed consolidated returns for the years prior to 1929. There were many intercompany transactions, together with losses for prior years shown on the consolidated returns, and there is no showing that any provision was made to eliminate or adjust such intercompany items, deductions, or losses. Such items must be eliminated in ascertaining any loss on the securities of or investments in an affiliate, and petitioner's failure to establish or show any of these essential elements is fatal to the proof of cost necessary under the statute. Furthermore, petitioner introduced no evidence to prove the fair market values of

the various properties received in exchange at the date of their acquisition. We have seen that the statute requires a showing of the fair market value of the "amount realized" in order to determine gain or loss upon exchange of property.

The Interstate Commerce Commission authorized the acquisition of the properties of the Meridian Company upon a basis of $509,465.09, and of the Jackson & Eastern Company upon a basis of $2,-979,887.17, and issued its certificate of convenience permitting said properties to be taken into the petitioner's books of account at these costs. Pursuant to said authorization and certificate, petitioner took over all of the properties of said subsidiaries at the prices thus fixed by the Interstate Commerce Commission, and thereafter used these costs as the basis for computing its depreciation deductions and its profit or loss thereon when sold. In liquidating said subsidiaries, petitioner undertook to determine its losses, and debited its profit and loss account as follows:

Loss on Meridian & Memphis
Company, ................. $226,568.90
Loss on Jackson & Eastern
Company, ................. 125,428.12
                          _____
    Total ................... $351,997.02

These losses were not taken as deductions in petitioner's 1929 return, because, when the return was prepared, petitioner's officers understood that the deductions were not allowable. However, they were claimed while the return was under consideration in the Revenue Bureau and were disallowed. The Board of Tax Appeals refused to allow any part of the losses claimed. The prices at which the properties were taken over were stipulated into the record by counsel only as prices at which the assets were authorized by the Interstate Commerce Commission to be set up on petitioner's books. There is nothing to show that these amounts represented the fair market value of the assets for income tax purposes. There is no showing in the record that the Commission made any valuation of the properties in question. So far as appears, it merely examined the items which petitioner alleged represented its investments, eliminated some, reduced others, and arrived at the maximum cost acceptable for rate-making purposes which it would per-

mit petitioner to enter upon its books. Respondent is not bound by the rules and principles of accounting methods of the Interstate Commerce Commission. Old Colony Railroad Company v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484. Our conclusion is that the petitioner has failed to prove the amount realized on the property taken in exchange for its securities. It is contended that there was an agreement between counsel before the Board that the amount of such claim by petitioner was correct, as representing the actual cost of the properties, and that therefore it made no further effort to introduce proof thereon. We do not so construe the agreement.

Finally, there is an assignment of error with reference to an alleged loss of $2,209.65 claimed to have been suffered by petitioner upon the taking over of the assets of the Birmingham & Northern Railway Company in 1929. The properties of this company were taken over at a price fixed by the Interstate Commerce Commission equal to the amount of petitioner's investment, so there was no loss or profit in the transaction. However, for accounting purposes, the transaction was made as of October 31, 1928. In other words, petitioner paid in 1929 for properties as they were on October 31, 1928. Between October 31, 1928, and January 1, 1929, the Birmingham & Northwestern Company lost $2,209.65. In entering the transaction on its books, petitioner debited or credited its various accounts for the properties received, at the prices fixed, and debited its profit and loss account with $2,209.65, because this, it contends, was a loss to it. It claims to have paid out that amount for something which it did not receive. Both respondent and the Board disallowed this loss. For reasons pointed out in connection with the other two affiliates, the petitioner has failed to prove that it paid this amount for property in excess of its value, but, whether it did or not, there is no statutory authority for petitioner's deducting on its separate return for 1929 an operating loss of its subsidiary for 1928. We think the item was properly disallowed.

The petition is denied, except as to the two items for depreciation on track material for the years 1928 and 1929, respectively. As to those items it is granted, with remand to the Board for further proceedings not inconsistent with this opinion.